UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD O. SMITH II,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commission of Social Security

    Defendant.
_____/

No. C 10-4814 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Clifford O. Smith seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying his claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment. Having read the parties' papers and administrative record, and having carefully considered their arguments and relevant legal authority, the court REMANDS the case for further proceedings consistent with this order.

**BACKGROUND**

    Smith filed an application for social security disability insurance ("SSDI") benefits on September 3, 2008, and an application for supplemental security income ("SSI") benefits on September 16, 2008. A.T. 127. He alleged disability beginning January 1, 2003. Id. The Commissioner denied his applications on February 11, 2009, and again, upon reconsideration, on May 29, 2009. A.T. 128. Smith filed a request for hearing on June 21, 2009. A.T. 10. An administrative law judge ("the ALJ") held a hearing on January 5, 2010.

A.T. 22. On June 2, 2010, the ALJ found that Smith had not been disabled within the meaning of the Social Security Act from January 1, 2003 through the date of his decision. A.T. 16. Smith then requested review of the ALJ's decision by the Appeals Council on June 22, 2010. A.T. 111. The Appeals Council denied his request for review on August 23, 2010, making the ALJ's decision the final decision of the Commissioner of Social Security. A.T. 5. On June 20, 2011, Smith brought this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's hearing, Smith was forty-nine years-old. A.T. 34. In 2005, Smith obtained his GED (A.T. 34) and subsequently, in 2008, completed an associate or arts degree at the Academy of Art.[1] A.T. 14. He had previously worked as a retail sales clerk, a chandelier designer, and a visual designer for department store windows. A.T. 146. Though Smith alleged both physical and mental impairments, the mental impairments constituted his primary impairment. A.T. 15.

Smith alleged that he suffers from post-traumatic stress disorder ("PTSD") and depression arising from physical, emotional, and sexual abuse during his childhood. A.T. 411, 445, 459. Smith further alleged that his depression was triggered by memories of the sexual abuse he suffered during his military service. A.T. 588.

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423 (a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

---

[1] The ALJ described Smith's degree from the Academy of Arts as an "associate or arts" degree, but the court presumes this was a typographical error.

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(i). If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(a)(4)(ii). The third step requires the ALJ to compare the claimant's impairment to a listing of impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and is awarded benefits. See 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's condition does not meet or equal a listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient "residual functional capacity" ("RFC") to perform his past work despite the limitations caused by the impairment. See 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his past work, the Commissioner is required to show, at step five, that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience." See 20 C.F.R. § 404.1520(a)(4)(v).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in his previous occupation. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work. Id.

### ALJ's FINDINGS

The ALJ determined that Smith was not disabled at step four of the disability evaluation, concluding that Smith possessed sufficient RFC to perform his past work in retail sales. A.T. 12. The ALJ first concluded that Smith had not engaged in any substantial gainful activity since January 1, 2003, the alleged onset of his disability. Id. At

1 step two, the ALJ found that he had the following severe impairments: "mixed psychological
2 impairments of depression, anxiety and PTSD and seizures of unknown etiology." A.T. 12.

3       At step three, the ALJ found that Smith's impairments, considered singly or in
4 combination, did not meet the requirements for Listings §§ 12.04 and 12.06. A.T. 13. The
5 ALJ noted that Smith had no restrictions on his daily activities, no difficulties in maintaining
6 social functioning, and mild difficulties in maintaining concentration, persistence, or pace.
7 Id. The ALJ further noted that Smith had not experienced any episodes of
8 decompensation. Id.

9       Having found that Smith did not suffer from a listed impairment, the ALJ assessed
10 Smith's mental RFC to consider whether it was sufficient for Smith to perform his past work,
11 despite the limitations caused by his impairments. A.T. 13. In doing this, the ALJ applied
12 another two-step process: (1) the ALJ determined whether there was an underlying
13 medically determinable mental impairment that could reasonably be expected to produce
14 Smith's pain or other symptoms; and (2) the ALJ evaluated the intensity, persistence and
15 limiting effects of Smith's symptoms to determine the extent to which they limited his
16 functioning. A.T. 13-14. The ALJ found that Smith failed to satisfy both steps. Id.

17       As a preliminary matter, the ALJ concluded that Smith lacked credibility. Id. He
18 noted that Smith had completed an associate or arts degree with the Academy of Art during
19 the alleged period of disability and worked part-time in 2008, thus, suggesting a "greater
20 capacity" for work than he alleged. Id. The ALJ also noted that Smith lived with his dog
21 and performed activities of daily living. Id. Lastly, the ALJ found that when Smith complies
22 with his treatment by taking his medication, both his seizure disorder and his psychological
23 issues are "fully controlled and do not preclude him from gainful work." Id.

24       After assessing Smith's credibility, the ALJ turned to Smith's allegations of a seizure
25 disorder. Id. The ALJ first considered the reports of the Veteran's Administration ("VA").
26 Id. The ALJ found that though the medical evidence reflected Smith's allegations of
27 seizures, there was no satisfactory work-up or diagnosis. Id. Additionally, the VA records
28 indicated that when Smith was compliant with medication, his seizures were adequately

controlled. Id. Computed Tomography ("CT") and Magnetic Resonance Imaging ("MRI") examinations of Smith's brain revealed no significant brain abnormality that would explain his seizures. Id. Aside from pelvic and hip treatments that did not have any continued impact on Smith's physical capacity, the ALJ found that Smith was healthy. Id.

The ALJ then assessed the findings of Dr. Shaler, the attending neurologist with the VA. A.T. 56. She examined Smith for the first time on February 28, 2007, and subsequently examined him six more times in 2009. A.T. 616. In her last report, dated December 29, 2009, Dr. Shaler concluded that Smith's seizures were not under control in February 2007, and had rendered him disabled.[2] A.T. 619.

The ALJ concluded that Dr. Shaler's findings were not supported by Smith's clinical treatment record or any qualifying rationale. A.T. 15. Rather, he noted that Dr. Shaler's findings appeared to be based on Smith's subjective complaints alone. Id. In contrast to Dr. Shaler's findings, the ALJ further noted that the most recent medical reports from the VA showed that Smith suffered from only partial epilepsy, and the reports did not mention any impairments or even intermittent seizure occurrences. Id. The ALJ thus determined that Smith's self-reported seizures had no diagnostic basis and that when Smith complied with his medication, he did not suffer from seizures. Id. Given the absence of diagnostic or clinical evidence of a disabling seizure disorder, the ALJ gave no weight to Smith's allegations of a seizure disorder. Id. Although the ALJ determined at step two that Smith's "seizures of unknown etiology" constituted severe impairments, the ALJ, in assessing Smith's RFC, did not find them as disabling as Smith alleged or as Dr. Shaler opined because of Smith's poor credibility and the fact that Smith's medication adequately controlled his seizures.

The ALJ next turned to Smith's primary impairment, his "combined psychological impairment." Id. The ALJ determined that the best psychological assessment was made

---

[2] Given the number of examinations, Dr. Shaler qualifies, at a minimum, as an examining physician. Whether she qualifies as a treating physician as well is unclear because Smith did not immediately recognize her name at the hearing, and he alleged that his neurologist at the VA was a different doctor, Dr. Parko. A.T. 55-56.

5

by the psychological consulting examiner ("CE"), Dr. Gonick-Hallows. Id. After reviewing Dr. Gonick-Hallows' report, dated January 20, 2009, the ALJ, however, afforded only partial weight to Dr. Gonick-Hallows' findings because, again, they appeared to be based on Smith's subjective statements and not on psychological testing. Id. The ALJ noted that Dr. Gonick-Hallows' report was otherwise supported by the VA's findings, including a consistent global assessment of function ("GAF") score.[3] Id.

The ALJ also assessed the diagnostic report and opinion by Smith's social worker/therapist, Jamie Moran, but afforded it little weight for several reasons. Id. First, the social worker/therapist was not an acceptable medical source under the Regulations. Id. Second, the report was "obviously written in support of [Smith's] applications for benefits." Id. Finally, the report differed from the VA's and the CE's reports regarding the severity of Smith's psychiatric impairment. Id.

In light of the above evidence, the ALJ concluded that Smith possessed an RFC for light work, with "mild limitations in concentration, persistence and pace and two absences per month." A.T. 13. The ALJ then turned to step four to determine whether Smith's RFC was sufficient for him to perform his past work. The ALJ posed several hypotheticals to the vocational expert ("VE"). A.T. 15-16. Given the VE's testimony, the ALJ found that Smith was able to perform his past work in retail sales and, thus, was not disabled within the meaning of the Act. A.T. 15-16.

Although the ALJ did not discuss step five in his report, the ALJ did in fact proceed to step five during the hearing. A.T. 60-61. When the ALJ posed the third hypothetical to the VE, premised on a moderate level of non-exertional limitations and two monthly absences, the VE responded that Smith would be precluded from his past work in retail sales. A.T. 61. Consistent with step five, the ALJ then inquired whether Smith could perform any other jobs in the unskilled category. Id. The VE responded that given the

---

[3] The GAF score assesses an individual's "overall psychological functioning" at a certain point in time and on a scale of 0 to 100. The GAF scale is found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). Barbara Samuels, 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:243 (2nd ed. 2011).

6

limitations in the third hypothetical, Smith would be precluded from all unskilled work. Id.

## STANDARD OF REVIEW

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991) (citing Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984)).

## ISSUES

Smith seeks reversal of the Commissioner's denial of SSDI and SSI benefits, arguing that:

(1) The ALJ improperly rejected the opinion of the psychological consulting examiner; and

(2) the ALJ improperly failed to consider all of Smith's mental limitations when posing hypothetical questions to the vocational expert.

## DISCUSSION

**1. The ALJ improperly rejected in part the opinion of the psychological consulting examiner.**

Smith contends that the ALJ failed to provide clear and convincing reasons when he improperly rejected in part the opinion of Dr. Gonick-Hallows, the psychological CE.

Dr. Gonick-Hallows examined Smith once on January 20, 2009, and prepared a report comprised of several sections. A.T. 459. In the section entitled "History," Dr. Gonick-Hallows recorded Smith's complaints and statements regarding his childhood and current social life. A.T. 460. Under "Current Mental Status and Emotional State," Dr. Gonick-Hallows reported his clinical observations. Id. Under "Test Results," Dr. Gonick-Hallows reported Smith's results on three tests: the WAIS-3 (Wechsler Adult Intelligence Scale), the Wechsler Memory Scale-3, and the Bender-Gestalt II. A.T. 460-61. Dr. Gonick-Hallows noted that Smith put in reasonably good effort, though his overall performance was "somewhat erratic." A.T. 461. Under "Diagnostic Impression," Dr. Gonick-Hallows propounded his diagnoses in a multiaxal diagnostic system based on five dimensions. Id. For the first axis, Dr. Gonick-Hallows diagnosed Smith with Mixed Anxiety/Depressive disorder, PTSD, dysthymia, irritability, and episodes of plummeting mood. Id. For the second axis, Dr. Gonick-Hallows diagnosed Smith with "mixed personality disorder w/ avoidant, paranoid, and passive-aggressive features." Id. Dr. Gonick-Hallows noted that Smith had a GAF of 58.[4] Id. In the final section of the report, "Medical Source Statement," Dr. Gonick-Hallows concluded that Smith may suffer from mild-to-moderate difficulty in interacting with others and is able to perform at least simple, repetitive tasks. Id. He also found that Smith "might" or may "perhaps" have marked deficits in competitive settings and managing work related stressors. Id.

As noted earlier, the ALJ rejected in part Dr. Gonick-Hallows' opinions. Smith contends that the ALJ failed to provide clear and convincing reasons for doing so. Specifically, Smith argues that contrary to the ALJ's rationale for the rejection, Dr. Gonick-Hallows' opinion was not premised mostly on his subjective complaints. Smith notes that not only did Dr. Gonick-Hallows conduct a mental status examination, he also administered

---

[4] Smith's GAF of 58 placed him in the range of 51 to 60, which "means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Marques v. Astrue, 758 F. Supp. 2d 835, 871 n.4 (W. Mo. 2010).

8

three standardized psychological tests: WAIS-3, Wechsler Memory Scale-3, and Bender-Gestalt II, which the ALJ did not question or challenge.

Moreover, Smith argues that the VA's reports supported Dr. Gonick-Hallows' report, and that there was no evidence, explicit or implicit, that the treating and consulting VA psychologists and psychiatrists reached their diagnosis of "Complex PTSD" by relying primarily on his subjective complaints.[5] Finally, Smith argues that the ALJ erred in concluding that the Mental RFC assessment completed by Dr. Lucila, the nonexamining State Agency evaluator, contradicted Dr. Gonick-Hallows' opinion. In fact, Smith notes that Dr. Lucila agreed with Dr. Gonick-Hallows, as evidenced by his comment on the Mental RFC Assessment form.

In opposition, the Commissioner contends that the ALJ provided specific, legitimate reasons for partially rejecting Dr. Gonick-Hallows' opinion as follows: (1) the ALJ was "troubled by the qualifiers used by Dr. Gonick-Hallows regarding when [Smith] 'might' have certain difficulties;" and (2) many of the statements in the report contained the word, "reported." The Commissioner argues that in relying on <u>Tommasetti v. Astrue</u>, the ALJ correctly found that Dr. Gonick-Hallows' findings were based on Smith's subjective complaints, which had already been discounted and which Smith does not appeal. 533 F.3d 1035, 1041 (9th Cir. 2008). Accordingly, the Commissioner contends that it was permissible for the ALJ to partially reject Dr. Gonick-Hallows' opinion and find that Smith's limitations in concentration, persistence, and pace were mild and that he required two monthly absences.

Ninth Circuit case law distinguishes among three types of physicians: (1) those who treat the claimant and have an ongoing treatment relationship with the claimant ("treating physicians"); (2) those who examine but do not have an ongoing treatment relationship with the claimant ("examining physicians"); and (3) those who neither examine nor treat the

---

[5] The VA psychologists actually assigned him a lower GAF score than Dr. Gonick-Hallows did (50). A GAF of 50 falls within the range of 41-50, which indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." <u>Jones</u>, 494 F. Supp. 2d at 1288.

claimant ("nonexamining physicians"). 20 C.F.R. § 404.1502; Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Here, Dr. Gonick-Hallows, as the psychological CE, constituted an examining physician. He examined Smith only once on January 20, 2009 (A.T. 459) and consequently, did not have an ongoing treatment relationship with Smith.

The examining physician's opinion is entitled to greater weight than that of the nonexamining physician. Lester, 81 F.3d at 830; see also 20 C.F.R. § 404.1527(d)(1). If the examining physician's opinion is uncontradicted, the Commissioner must provide "clear and convincing" reasons for rejecting the opinion. Lester, 81 F.3d at 830. Moreover, even if the opinion of the examining physician is contradicted by another doctor, it can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. Id. at 830-31. In short, an ALJ's conclusory reasons are not sufficient to justify rejection of a medical opinion. Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1299 (9th Cir. 1999); see also Tommasetti, 533 F.3d at 1041 (the ALJ can meet the burden of specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings"). Against these general principles, the Ninth Circuit in Morgan v. Commissioner of Social Security Administration, held that a physician's opinion of disability may be rejected if it is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" and "where those complaints have been properly discounted." 169 F.3d 595, 602 (9th Cir. 1999).

In Morgan, the ALJ rejected the opinion of the examining psychologist on the ground that it was based on the claimant's allegations, which the ALJ deemed not credible. Id. at 598-99. The Ninth Circuit affirmed the ALJ's decision, concluding that he provided legitimate and specific reasons supported by the record. Id. at 600. Specifically, the court noted that the ALJ listed examples of how the examining psychologist's opinion was "unreasonable given the description of [the claimant's] symptoms in [the] reports and other evidence in the record." Id. at 601. Because the examining psychologist's opinion was

unreasonable, the ALJ determined that the opinion was largely based on the claimant's subjective statements. Id. at 602.

Similarly, in Tommasetti, the ALJ partially rejected the opinion of the treating physician because it was essentially a "rehashing of claimant's own statements," which the ALJ found to be not credible. 533 F.3d at 1041. The Ninth Circuit affirmed the ALJ's assessment because the ALJ provided specific and legitimate reasons demonstrating that the opinion largely reflected the claimant's subjective complaints and contained little independent analysis or diagnosis. Id.

By contrast, in Ryan v. Commissioner, the Ninth Circuit reversed the ALJ's denial of benefits because the ALJ's rationale for rejecting the examining physician's opinion, that it relied "too heavily on [the claimant's] subjective complaints," did not constitute a clear and convincing reason. 528 F.3d 1194, 1199 (9th Cir. 2008). The court found that the examining physician's opinion was not, in fact, based on the claimant's subjective complaints. Id. Although the examining physician "unsurprisingly" recorded the claimant's complaints, he also recorded his own clinical observations. Id. The court noted there was simply nothing in the record to suggest that the examining physician relied more heavily on the claimant's complaints than on his own clinical observations in concluding that the claimant was incapable of holding a regular work schedule. Id. at 1200.

The instant case is more analogous to Ryan, 528 F.3d at 1194, than it is to Morgan, 169 F.3d at 600, and Tommasetti, 533 F.3d at 1041. Morgan and Tommasetti are distinguishable because, unlike the ALJ's decisions in those cases, the ALJ here did not provide clear and convincing reasons regarding how and to what degree, if at all, Dr. Gonick-Hallows' uncontroverted opinion was based on Smith's subjective complaints.[6] Morgan, 169 F.3d at 600; Tommasetti, 533 F.3d at 1041.

Here, as in Ryan, the ALJ failed to demonstrate how Dr. Gonick-Hallows' opinion was primarily based on Smith's complaints. 528 F.3d at 1199. Rather than point to specific

---

[6] The ALJ noted that Dr. Gonick-Hallows' report was "supported by the findings of sources at the VA." A.T. 15.

11

portions of the doctor's opinion itself or provide other reasons to support his finding, the ALJ simply concluded for two reasons that Dr. Gonick-Hallows' opinion was based on Smith's subjective statements. A.T. 15. First, the ALJ noted that based on Smith's subjective complaints, Dr. Gonick-Hallows indicated that Smith "may have mild-to-moderate difficulty in interacting with others and is able to carry out at least simple, repetitive tasks."[7] A.T. 15. This statement, however, does not adequately explain how or why the ALJ dismissed Dr. Gonick-Hallows' findings as based on Smith's complaints. Second, the ALJ stated that "[Dr. Gonick-Hallows'] findings appear[ed] to be based on [Smith's] subjective statements." A.T. 15. This is even less explanatory than the first statement.

The ALJ's failure to provide clear and convincing reasons is further aggravated by the fact that the bulk of Dr. Gonick-Hallows' report contained his clinical observations and Smith's results on the three psychological tests. Thus, this case is unlike Tommasetti, where the ALJ properly rejected the treating physician's opinion in the absence of independent analysis or diagnosis. 533 F.3d at 1041. Instead, again, it is more akin to Ryan, where the Ninth Circuit concluded that the ALJ improperly rejected the examining physician's opinion given the physician's clinical observations. 528 F.3d at 1199. Like the physician in Ryan, Dr. Gonick-Hallows performed a comprehensive analysis of Smith and provided diagnoses and conclusions concerning Smith's ability to function in work settings. Id. While the "History" section of Dr. Gonick-Hallows' report may have contained Smith's allegations, the remainder of his report did not simply rehash Smith's complaints.

Morever, as pointed out by Smith, each of the three tests administered by Dr. Gonick-Hallows fits within the definition of a "standardized psychological test," as set forth in the social security regulations. 20 C.F.R. Pt. 404, Subpt. A, App. 1, § 12.00. The Ninth Circuit has further recognized the tests administered by Dr. Gonick-Hallows as objective clinical tests that are sufficient to diagnose a mental impairment. See Vasquez v. Astrue, 572 F.3d 586, 596 (9th Cir. 2008) (finding that the WAIS-III and Wechsler Memory Scale

---

[7] The quoted language represented one of Dr. Gonick-Hallows' conclusions found in a section of his report entitled "Medical Source Statement." A.T. 462.

1 were "objective clinical tests"). Additionally, all three tests were administered by Dr.
2 Gonick-Hallows himself, a qualified specialist who is currently licensed in California. Thus,
3 in accordance with Ryan, there is simply nothing in Dr. Gonick-Hallows' report that
4 suggests that he relied more heavily on Smith's statements than on his own clinical
5 observations and the test results. 528 F.3d at 1200. Nor does the ALJ proffer any specific
6 and legitimate reasons, supported by substantial evidence, in support of his finding that Dr.
7 Gonick-Hallows did so. The ALJ thus failed to demonstrate, with clear and convincing
8 reasons, how Dr. Gonick-Hallows' uncontradicted opinion was premised on Smith's
9 subjective complaints, and his reasons therefore fall short of the requirements set forth by
10 the Ninth Circuit. See Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 602.

11 In so holding, the court rejects the Commissioner's argument that the ALJ was
12 entitled to discount Dr. Gonick-Hallows' opinion because he was troubled by the use of
13 qualifiers in the report, specifically, the words "may," might," and "perhaps." A.T. 15. The
14 Commissioner cites to Morgan for the proposition that an ALJ may reject a doctor's opinion
15 which identifies symptoms that may limit a claimant's ability to work but does not explain
16 how the symptoms "translate into specific functional deficits that preclude word activity."
17 169 F.3d at 601. While the Commissioner correctly summarizes one of the Ninth Circuit's
18 reasons for affirming the ALJ's decision in Morgan, the Commissioner's reliance on Morgan
19 is ultimately misplaced because Morgan is completely unrelated to the issue of qualifiers.

20 In Morgan, the court affirmed the ALJ's rejection of the physician's report because
21 the report did not show *how* the claimant's symptoms, such as his intense anger and
22 suicidal thoughts, precluded him from work activity. Id. Nowhere in Morgan did the Ninth
23 Circuit address a physician's use of qualifiers because the physician in Morgan did not use
24 qualifiers. The ALJ was instead focused on the absence of specific functional deficits. Id.
25 In contrast to Morgan, here, Dr. Gonick-Hallows identified several specific functional
26 deficits, for example, Smith's difficulty in interacting effectively with coworkers, supervisors,
27 and the general public in cooperative settings, his marked deficits in competitive settings,
28 and his moderate to marked deficits in managing the usual work-related stresses. A.T.

462. Finally, even when a physician has used qualifiers in identifying specific functional deficits, the Ninth Circuit has not held that such use entitles the ALJ to withhold deference from the doctor's opinion. Ryan, 528 F.3d at 1196 (deferring to the examining psychiatrist who had found that the claimant was "not *likely* to deal with the usual stressors in a competitive work place") (emphasis added).

In sum, the ALJ failed to provide any reasons, much less clear and convincing ones supported by substantial evidence, for rejecting the uncontroverted opinion of Dr. Gonick-Hallows.

**2.    The ALJ's hypotheticals to the vocational expert were incomplete and therefore, the vocational expert's testimony lacked evidentiary value.**

During the hearing, the ALJ posed three hypotheticals to the VE. A.T. 59-61. In the first hypothetical, the ALJ asked the VE to consider three limitations: a light exertion level, typical seizure precautions (no heights, hazardous equipment, or driving), and a mild level of non-exertional limitations in concentration, pace, and persistence. A.T. 59-60. The VE replied that Smith's past work in retail sales was viable. A.T. 60. The second hypothetical added an additional limitation: two monthly absences. The VE replied that retail sales would still be viable. Id. In the third hypothetical, the ALJ increased the non-exertional limitation level regarding concentration, pace, and persistence to moderate. Id. According to the VE, the moderate level, on its own, was sufficient to preclude all past work and all work in the unskilled category. A.T. 61. In finding Smith not disabled at step four, the ALJ relied on the VE's responses to the first and second hypotheticals.

Smith's counsel also posed hypotheticals to the VE that incorporated some of Dr. Gonick-Hallows' findings. Id. In the first hypothetical, Smith's counsel added a limitation regarding moderate difficulty in interacting effectively with coworkers, supervisors, or the general public in a cooperative setting. Id. In the second hypothetical, Smith's counsel added the limitation arising from moderate to marked deficit in managing usual work-related

stresses.[8] Id. For both hypotheticals, the VE concluded that an individual could not work on a "regular sustained basis." Id.

Smith argues that because the ALJ improperly rejected Dr. Gonick-Hallows' opinion, the ALJ also erred by placing "outcome-determinative reliance" on hypotheticals that did not incorporate the limitations articulated in Dr. Gonick-Hallows' opinion. Moreover, Smith contends that the ALJ improperly opined that Smith would only have two monthly absences, even though there was no medical finding to support such a limitation.

The Commissioner counters that because the ALJ properly assessed Smith's mental RFC, the ALJ's hypothetical questions to the VE included all of Smith's limitations. Accordingly, the VE's responses properly constituted substantial evidence.

"[A]n ALJ is not free to disregard properly supported limitations." Robbins v. SSA, 466 F.3d 880, 886 (9th Cir. 2006). A hypothetical that omits any of the claimant's limitations is not "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the hypothetical is not supported by the record, the VE's opinion "has no evidentiary value." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

As discussed above, because the ALJ failed to provide clear and convincing reasons to explain how Dr. Gonick-Hallows' opinion was largely based on Smith's complaints, the ALJ improperly assigned only partial weight to the opinion. Had the ALJ assigned full weight to the opinion, as he should have with the uncontradicted opinion of an examining physician, he may not have disregarded Dr. Gonick-Hallows' findings. This, in turn, may have prompted the ALJ to pose and to rely on hypotheticals that incorporated some or all of Dr. Gonick-Hallows' findings. As for Smith's argument that there is no medical evidence to support the proposition that Smith would need only two monthly absences, there is also no medical evidence to support that Smith would need more. The ALJ's finding of two monthly

---

[8] It is unclear from the transcript whether the limitation in the second hypothetical was an addition or substitution to the limitations in Smith's first hypothetical. Whatever error may arise from this ambiguity is harmless, however, because Smith would be precluded from all work based on his first hypothetical alone.

absences is unsupported by the evidence and consequently, the second hypothetical, which incorporated this limitation, has no evidentiary value.

The ALJ's erroneous determination at step four was not harmless error. When Smith posed hypotheticals that incorporated the limitations in Dr. Gonick-Hallows' opinion, the VE concluded that Smith would be precluded from his past work in retail sales and all unskilled work. If the ALJ had relied on these hypotheticals, he would not have found that Smith was not disabled.

Because the ALJ failed to accord Dr. Gonick-Hallows' opinion full weight, the ALJ improperly disregarded potentially supported limitations. Accordingly, the VE's answers to the first two hypotheticals, upon which the ALJ relied, do not constitute substantial evidence.

## CONCLUSION

For the foregoing reasons, the court GRANTS Smith's motion, DENIES the Commissioner's cross-motion, and REMANDS the case for further proceedings. Specifically, the court concludes that: (1) the ALJ erred in partially rejecting the uncontradicted opinion of Dr. Gonick-Hallows, and (2) the ALJ erred in posing hypotheticals to the VE that did not reflect all of Smith's limitations, specifically those in Dr. Gonick-Hallows' opinion.

On remand, the ALJ should further consider Dr. Gonick-Hallows' opinion and articulate clear and convincing reasons, if any, to reject the opinion. Once the ALJ has considered Dr. Gonick-Hallows' opinion on remand, he should present to the VE a new hypothetical that reflects any changes in Smith's RFC and/or all of the properly supported limitations.

////
////
////
////
////

This order fully adjudicates the motions listed at numbers eighteen and nineteen of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 26, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge